GIESEN v. LONDON & NORTHWEST AMERICAN MORTG. CO., Limited.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1900.)

No. 1,339.

1. CORPORATIONS—RIGHTS AND LIABILITIES OF STOCKHOLDERS IN FOREIGN CORPORATIONS—LAW GOVERNING.

When a person subscribes for stock in either a domestic or a foreign corporation, he thereby consents to be governed by the provisions of its charter or the general law under which it is incorporated, and by such by-laws as the corporation may lawfully enact, and that his rights and liabilities as a stockholder shall be tested and determined by such laws.

2. SAME—ENFORCEMENT OF RIGHTS UNDER FOREIGN STATUTE.

When a foreign sovereignty, having authority to do so, confers upon one of its corporations the right to readjust its indebtedness in a given manner, or to liquidate its affairs, or to make assessments upon its shareholders, the right so conferred will be recognized and enforced by the courts of the United States, provided the foreign statute accords to all creditors and stockholders equal privileges, without reference to their place of residence or citizenship, and does not contravene the general policy of our laws.

3. SAME—LIABILITY OF STOCKHOLDER FOR ASSESSMENT—FAILURE TO HAVE STOCK TRANSFERRED.

Defendant, a citizen of the United States, became a subscriber to the stock of an English corporation, upon which he made a partial payment. He was entered as a shareholder upon the books of the company, and received a certificate of stock, which bore a printed indorsement to the effect that no transfer of the shares would be registered except on return of the certificate. The by-laws of the company required a fee for registration of transfers, and the British laws imposed a penalty for the registration of any transfer unless the assignment bore a revenue stamp. Defendant sold and assigned his certificate, but no stamp was affixed thereto, and he took no steps to have a transfer made on the company's books. A request afterwards made by the assignee for a transfer was refused because of nonpayment of the fee, and no transfer was ever made. For some two years after the assignment, defendant continued to sign receipts for dividends at the request of the assignee. Subsequently proceedings were commenced, in accordance with the English law, to liquidate the affairs of the company, and with the approval of the court having due authority therefor, in such proceedings, assessments were levied upon the shareholders for the benefit of creditors. Held, that defendant was liable for such assessments, as a stockholder, and that such liability was enforceable in the courts of the United States.

4. SAME—POWER TO REGULATE TRANSFER OF STOCK.

A statutory provision that a corporation shall on application by a transferror of stock therein, enter the name of the transferee on its register of shareholders in the same manner as if the application was made by the transferee, does not render invalid a by-law of a corporation requiring the payment of a small fee for making such transfers.

In Error to the Circuit Court of the United States for the District of Minnesota.

This action was brought by the London & Northwest American Mortgage Company, Limited, the defendant in error, and an English corporation, against Peter Joseph Giesen, the plaintiff in error, to recover the sum of $2,919.90, exclusive of interest; said sum being the amount, in the aggregate, not including interest, of six calls or assessments on 100 shares of its capital stock, that had been levied, with the approval of an English court, in the course of a proceeding pending therein to liquidate the affairs of the plaintiff company. The case depends for its decision upon a special finding of facts made by the trial court, from which we extract the following find-

ings: In the year 1885 Albert Scheffer, A. E. Hendrickson, and E. J. Hodgson, of St. Paul, Minn., became interested with certain residents of London, England, in the promotion of an English corporation to be organized for the purpose of carrying on a loaning business. The funds were to be raised in part by subscriptions to the stock of the corporation, but principally by the sales of its debentures in Great Britain. The principal place of business of the corporation was to be in London, but its funds were to be loaned in the state of Minnesota and other adjoining states, through the sole agency of said Scheffer, Hendrickson, and Hodgson, who were to contribute at least $100,000 towards the enterprise. Pursuant to this scheme the plaintiff company was organized on March 17, 1886, under and pursuant to the provisions of an act of parliament of the kingdom of Great Britain and Ireland, which was approved on August 7, 1862, and subsequently amended, and, together with its amendments. is generally known as the "Companies Acts, 1862 to 1890." After the company was organized a contract was entered into on October 14, 1886, between it and said Scheffer, Hendrickson, and Hodgson, of St. Paul, Minn., whereby it was agreed that the latter should be the advisory board and agents of the plaintiff company in America, and should continue to act as such advisory board and agents so long as they conducted the business to the satisfaction of the directors, or so long as it should be for the interests of the shareholders, of which the directors were to be the sole judges. Said Scheffer. Hendrickson, and Hodgson were to have power to negotiate loans for the plaintiff company, but were not to make loans to an amount exceeding £2,000 without consulting the board, and were not to loan upon any property more than 50 per cent. of its value. The directors of the plaintiff company agreed to remit from time to time to said agents, or to place to their credit in a bank in St. Paul, Minn., such sums of money as said agents might require immediately for investment; and said agents were to be held jointly and severally responsible for the care of said money until it was loaned, and the securities therefor were duly delivered and recorded. Pursuant to this agreement said Scheffer, Hendrickson, and Hodgson, as agents for the plaintiff company, and under the title of "advisory board," carried on the mortgage-loan business of the plaintiff at the city of St. Paul, Minn., until some time between June 1, 1892, and October 1, 1892. when they resigned. Their duties as such agents consisted in making loans for the plaintiff company upon real-estate security, and in collecting the interest and principal due thereon. They also solicited subscriptions to the capital stock of the plaintiff company, and one of said agents, to wit, E. J. Hodgson, acted as secretary of the advisory board, and conducted most of its correspondence. All loans made or collected by the board were reported monthly to the plaintiff's office, in London. The only books which said agents kept, pertaining to the plaintiff's business, were a cash book and a loan register, transcripts from which books were regularly forwarded to the home office. Said advisory board never assumed or held itself out to the defendant or to the public as possessing the power to issue or transfer any shares of the capital stock of the plaintiff company. On or about April 1, 1886, the defendant, Giesen, at the solicitation of Albert Scheffer. subscribed for 100 shares of the capital stock of the plaintiff company, which were of the par value of £10 sterling each; and that number of shares of stock were duly allotted to the defendant, and the defendant's name was duly entered upon the stock register of the plaintiff company as the owner of the shares so subscribed and allotted. The defendant paid to the plaintiff company on account of said stock the sum of £2 sterling on each share thereof, or, in the aggregate, £200 sterling. On August 25, 1887, a certificate for said 100 shares of stock was duly issued by the plaintiff company, and the same was delivered to and accepted by the defendant. On the back of this certificate was a printed indorsement to the effect that no transfer of said shares would be registered unless accompanied by the certificate. No transfer of said shares has ever been entered upon the books of the plaintiff company, and the defendant since April 21, 1886, has appeared in the plaintiff's register of members as the owner and holder of said 100 shares of stock. In the month of August, 1889, the defendant sold his stock to Albert Scheffer, one of the advisory board, and indorsed his

name in blank on the back of the aforesaid certificate, and delivered the same to Scheffer, receiving therefor the sum of $1,000. Some two years later, on or about October 16, 1891, the defendant, at the request of said Scheffer, executed and delivered to a company which was known as the American Mortgage & Security Company, which was a corporation organized under the laws of the state of Minnesota, an instrument in writing whereby he bargained, sold, assigned, and transferred to it the aforesaid 100 shares of stock in the plaintiff company; but no new consideration was paid to the defendant upon the execution of the last-mentioned assignment. Said written assignment last aforesaid was not stamped, nor has it since been stamped, with a revenue stamp, such as is required by the English stamp acts to entitle said transfer to registration upon the books of the plaintiff company. Under English laws the registration of said transfer without the proper revenue stamp would have subjected the officer registering the same to a penalty. The defendant, Giesen, never applied to the plaintiff company, nor to any officer thereof, to have the aforesaid transfer of his stock registered upon the books of the plaintiff company. The only notice that was ever given by the defendant to the plaintiff company of the sale of his stock, except such as was given to the plaintiff's agents, as aforesaid, who composed its advisory board in the city of St. Paul, was a notice given by a letter written at St. Paul on June 20, 1894, which letter was written after proceedings to liquidate the affairs of the plaintiff company had been taken, and after an assessment of £1 per share had been levied upon shareholders in the course of said proceedings. In the month of November or December, 1891, the American Mortgage & Security Company transmitted by mail to the plaintiff company the aforesaid written assignment of the defendant's stock, for the purpose of having the same transferred upon the plaintiff's books; but the plaintiff company immediately returned the same to the sender, and refused to record the transfer, for the reason that the fee for making such transfer, which was authorized by the plaintiff's articles of association, had not been paid. No fee was in fact tendered by the American Mortgage & Security Company for making said transfer, and no further effort was made to obtain a transfer upon the company's books. Moreover, the assignment of the stock was not stamped, as it should have been to entitle it to transfer under English laws.

Between October 31, 1887, and March 31, 1892, the plaintiff company declared nine dividends upon its capital stock, including that which was registered in the name of the defendant. The dividends payable to the defendant and to other American shareholders of the plaintiff company were on each occasion sent to Hodgson, as secretary of the advisory board, for distribution among such shareholders. The first dividend was in the form of separate checks, which were made payable to the shareholders, respectively, and was accompanied with a letter of advice to the respective shareholders. All of the remaining dividends were forwarded in gross to said Hodgson, for distribution by him among the shareholders. As respects the last seven of said dividends, an entry was made on the plaintiff's dividend book showing the payment of the said dividends to the defendant; and as respects five of these dividends, to wit, the first, second, fourth, seventh, and eighth, the entries upon the plaintiff's books showing the payment of the dividends to the defendant were made in pursuance of receipts therefor which were signed by the defendant. The last of these receipts was dated October 15, 1891, and was for a dividend on the stock to June 20, 1891. These receipts, however, were signed by the defendant, at the request of Albert Scheffer, a member of the plaintiff's advisory board, to enable him or the American Mortgage & Security Company to obtain the dividends. When the receipts were so obtained, they were forwarded in due course of mail to the plaintiff company. A resolution to wind up the affairs of the plaintiff company was adopted on October 25, 1893, in accordance with English laws; and thereafter a compromise agreement between the plaintiff company and its creditors was proposed, which was duly approved on December 6, 1893, by the English court, to wit, the high court of justice, that had jurisdiction of the liquidation proceedings. On June 30, 1896, another resolution for winding up the plaintiff company was passed, and approved by the high court

of justice; it having been found impossible to liquidate the affairs of the company in accordance with the first scheme which was formulated for that purpose. The assessments, on account of which the present action is brought appear to have been made during the course of the aforesaid liquidation proceedings, and to have been levied strictly in accordance with the companies acts, 1862 to 1890, under and in accordance with which said liquidation proceedings were inaugurated. In view of the aforesaid findings, which have been stated in substance, the trial court concluded that the plaintiff below was entitled to recover, and it accordingly rendered a judgment in its behalf for the sum of $4,866.50, to reverse which the defendant below sued out a writ of error.

C. D. O'Brien (Thomas D. O'Brien, on the brief), for plaintiff in error.

W. H. Yardley, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

When a person subscribes for stock either in a domestic or a foreign corporation, he thereby consents to be governed by the provisions of its charter or the general law under which it is incorporated, and by such by-laws of the corporation as may be lawfully enacted, and that his rights and liabilities as a stockholder shall be tested and determined with reference to such laws. The fact that a stockholder of a corporation is not a citizen or resident of the state or country where the corporation was incorporated does not exempt him from the operation of any of those provisions of the act of incorporation, be it a general or special act, which determine the rights and liabilities of domestic shareholders, and regulate their dealings with the corporation. Every corporation carries its charter wherever it goes and is allowed to transact business; and, while a corporation may be restricted in the exercise of some of its powers while doing business in a foreign state, yet every one who deals with it is bound to take notice of the authority that is conferred upon it by the act from which it derives its corporate existence. This is especially true of one who subscribes for stock, and thereby becomes a member of the company. Relfe v. Rundle, 103 U. S. 222, 226, 26 L. Ed. 337; Silver Mines v. Brown, 19 U. S. App. 203, 208, 7 C. C. A. 412, 58 Fed. 644. It has also been held that when a foreign sovereignty, having authority so to do, confers upon one of its corporations the right to readjust its indebtedness in a given manner, or to liquidate its affairs, or to make assessments upon shareholders, the right so conferred will be recognized and enforced by the courts of the United States, provided the foreign statute accords to all creditors and shareholders equal privileges, without reference to their place of residence or citizenship, and does not contravene the general policy of our laws. Railway Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363, 27 L. Ed. 1020. See, also, Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, 34 L. Ed. 262; First Nat. Bank of Deadwood v. Gustin-Minerva Con. Min. Co., 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676. It follows, therefore, that the defendant was and is

588 102 FEDERAL REPORTER.

subject to all the provisions of the companies act of 1862 and the subsequent amendments thereof, that his rights are to be determined thereby, and that he can only avoid liability as a shareholder by showing that, prior to the commencement of the liquidation proceedings against the plaintiff company, he had done whatever was necessary under the provisions of that act to have his stock transferred upon the company's books, and his name stricken from the list of registered shareholders or contributories. The findings by the trial court show that the defendant did nothing personally, prior to the commencement of the liquidation proceedings, to have his name removed from the list of registered shareholders. It is true that he had indorsed his stock certificate, and had subsequently executed a written assignment of his shares in the company, but he had made no application to it to have the stock transferred on its books; and it seems obvious, from the fact that he receipted for dividends for more than two years after he had sold and assigned his stock, that he must have been aware that his transferee had not made an application to have the stock transferred on the company's books, or that, if such application had been made, it had been for some reason denied, and that his name was still borne on the books as a registered shareholder. In point of fact, the stock was not transferred on the books when a transfer was solicited in December, 1891, because the transfer fee prescribed by the by-laws of the company was not paid; and, under the findings by the trial court, it is also manifest that the transfer of the stock could not have been lawfully made when it was solicited by the transferee, because the assignment of the shares was not stamped as it should have been to entitle it to registration. Under these circumstances it is clear, we think, in view of the construction that has heretofore been placed on the companies act by the courts of Great Britain, that the defendant, Giesen, cannot successfully claim exemption from liability as a stockholder. In the leading case of Oakes v. Turquand, L. R. 2 H. L. 325, 345, 349, the principle was established, and has since been firmly adhered to, that under the companies act a person who is liable to assessment, and to have his name placed on the list of contributories in liquidation proceedings, is any person who has agreed to become a member of the company, and whose name is upon the register of stockholders. A person whose name so appears upon the register of stockholders when liquidation proceedings are instituted (the same having been placed there originally with his consent) cannot avoid liability as a shareholder, and is estopped from so doing, although he was induced to become a subscriber through fraud. And in Gustard's Case (In re European Central Ry. Co., L. R. 8 Eq. 438, 443), wherein it appeared that a stockholder had sold and assigned his stock prior to liquidation proceedings, and had sent the transfer to the company's office to be recorded, and had not been notified that the company had declined to transfer it because of the alleged nonpayment of calls, it was held that the company was under no obligation to send a notice of its refusal to make the transfer, and that it was the stockholder's duty to see that everything was complete, or, in other words, that everything had

been done to entitle him to a transfer of the shares upon the company's books. In this country it has also been decided, under statutes requiring transfers of stock to be made on the books of the corporation, that the corporation may treat those persons as shareholders whose names appear as such on the books of the company, notwithstanding the fact that they have sold and assigned their stock to a third party, who has not perfected the transfer. Richmond v. Irons, 121 U. S. 27, 58, 59, 7 Sup. Ct. 788, 30 L. Ed. 864; Hawkins v. Glenn, 131 U. S. 319, 334, 335, 9 Sup. Ct. 739, 33 L. Ed. 184. This court has also pointed out on several occasions that a transfer of stock which is good and effectual, as between the vendor and the vendee, to vest the latter with a complete equitable title, may not be effectual to relieve the vendor from his liability to the corporation or its creditors, because in all matters relating to the internal government of the corporation the latter are entitled to treat those persons as shareholders whose names appear upon the register of shareholders, until their shares are transferred upon the books in the mode prescribed by the company's charter and by-laws. Bank of Commerce v. Bank of Newport, 27 U. S. App. 486, 489, 11 C. C. A. 484, 63 Fed. 898; Horton v. Mercer, 36 U. S. App. 234, 238, 239, 18 C. C. A. 18, 71 Fed. 153.

The claim is interposed on the part of the defendant that when, in December, 1891, the American Mortgage & Security Company, the assignee of the stock, transmitted the assignment thereof to the plaintiff company, and asked to have it transferred upon the company's books, the latter company had no power to demand a fee for recording the assignment, and that, having made the demand without authority, the stock should be treated as having been duly transferred upon the books at that time. This contention is based on the ground that the provision contained in the company's articles of association, requiring the payment of a fee of two shillings and sixpence for entering transfers, is in conflict with the companies act. We are unable to hold, however, that there is any conflict between the act and the articles of association; for while it is true that the act provides, in substance, that a company shall, on application of the transferror of any share in the company, enter in its register of members the name of the transferee in the same manner as if the application for such entry was made by the transferee, yet it cannot be inferred, we think, that this provision of the companies act was intended to prevent the members of a company from establishing by their articles of association reasonable rules and regulations governing the transfer of stock. A rule like the one now under consideration, exacting the payment of a small fee to cover the necessary expense of making such transfers in an orderly manner and keeping a suitable record thereof, cannot be said to be unreasonable, and on that account void. But, even if this view were erroneous, there seems to be no escape from the conclusion, in view of the findings by the trial court, that the American Mortgage & Security Company was not entitled to have the assignment of the stock registered upon the books at the time such request was made, or at any time thereafter, because the assignment was not stamped

in conformity with English laws, and because the officer of the plaintiff company who was requested to enter and record the assignment would have incurred a penalty by so doing.

Upon the whole, we feel constrained to hold that the defendant's name was properly placed on the list of contributories in the liquidation proceedings, because he was a registered shareholder when those proceedings were inaugurated, and had not therefore taken the necessary steps to make it the legal duty of the plaintiff company to transfer his stock upon the books. The creditors of the plaintiff company are entitled to treat the defendant as a stockholder, under the provisions of the act from which the company derived its corporate existence, and by becoming a stockholder the defendant agreed to become bound and to have his rights determined by the provisions of that act. The judgment below being for the right party, it is accordingly affirmed.