[S. F. No. 5720.  In Bank.—June 14, 1913.]

## WILLIAM TAPPAN LUM, Appellant, v. AMERICAN WHEEL AND VEHICLE COMPANY (a Corporation), et al., Respondents.

Corporation—Stock Issued Under Agreement That it shall be
    Fully Paid and Nonassessable—Directors cannot Assess—
    Rights of Creditors not Involved.—A Californian corporation,
    which sells shares of its capital stock upon an express agreement
    that the stock shall be issued as fully paid and shall be nonassess-
    able, and the certificates of which recite that the stock is fully paid
    and nonassessable, cannot, by its directors, levy an assessment upon
    such stock, where no rights of a creditor are directly involved.

Id.—Assessment Intended to Pay Corporate Debts.—The fact that
    the assessment was designed primarily for the purpose of paying
    the claims of its creditors did not authorize the corporation to levy
    it on such stock.

Id.—Contracts Between Corporation and Stockholders.—A corpora-
    tion may enter into an agreement with its stockholders to do or to
    refrain from doing something where such action or abstention is
    not contrary to express law or to public policy.

Id.—Validity of Contract—Constitutional Provision Imposing Per-
    sonal Liability on Stockholders—Power to Levy Asssesments.
    Such contract is not inimical either to section 3 of article XII of
    the constitution, which merely imposes a direct personal liability on
    the stockholder to the creditor, without referring to the relations
    existing between the corporation and its stockholders; or to sections
    331 and 332 of the Civil Code, the first of which merely gives the
    directors of a corporation the right to levy assessments upon paid-
    up stock, without compelling them to do so, while the latter merely
    announces certain limitations upon the general power of assessment.

    CLXV Cal.—42

APPEAL from an order of the Superior Court of the City and County of San Francisco dissolving an injunction. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

A. F. St. Sure, and Henry G. Tardy, and William B. Bosley, and James S. Spilman, *Amici Curiae,* for Appellant.

Frank A. Duryea, for Respondents.

MELVIN, J.—This case was decided by the district court of appeal and an order of the superior court dissolving an injunction *pendente lite* against the sale of plaintiff's stock for nonpayment of an assessment was upheld. This court granted a rehearing and upon a further consideration of the matter we have reached a different conclusion. However, we adopt the statement of fact from the opinion of the district court of appeal as follows:

"The defendant in this case is a corporation organized and existing under the laws of the state of Arizona. Its principal place of business is designated at Phoenix, Arizona, and it also maintains an office for the transaction of business in the city and county of San Francisco. The corporation is empowered to and is doing business in the state of California. All of the directors and officers of the corporation are residents of the state of California, and all of the meetings of its board of directors have been held in the state of California.

"The plaintiff is a stockholder in the corporation defendant, and all of his stock therein was issued to him as fully paid and nonassessable, and at the time of its purchase it was understood and agreed between the plaintiff and the corporation defendant that such stock would continue to be nonassessable.

"Prior to the commencement of this action the corporation defendant levied an assessment of one cent per share upon its capital stock and notified its stockholders that their stock would be sold at public auction if the assessment was not paid within a designated time. After a failure to pay the assessment, the defendant threatens to sell the plaintiff's stock, and the plaintiff seeks in this action to have said assessment de-

clared null and void, and to perpetually enjoin the corporation and its directors from making the threatened sale.

"Upon the filing of the complaint the lower court granted and issued its injunction pending the litigation, enjoining the sale of the plaintiff's stock. This appeal is from an order dissolving the injunction, and the case comes here upon a bill of exceptions made up of the plaintiff's complaint, the record of the defendant's motion to dissolve and the affidavits offered in support of the motion and used upon the hearing thereof. It appears from the affidavits, and it is also admitted here, that previous to and at the time of the levying of the assessment complained of the corporation defendant was indebted in the sum of $24,235.00 to various firms and persons, which indebtedness was legitimately and necessarily incurred in the maintenance and operation of the business of the corporation, and that the defendant had no funds on hand or income sufficient to pay said indebtedness, or to enable it to pay its necessary operating expenses as they accrued in the ordinary course of its business. In short, it was shown, and not disputed upon the hearing of the motion to dissolve the injunction, that the defendant was heavily in debt and practically insolvent, and that the assessment in question was levied primarily for the purpose of paying the claims of creditors of the corporation.

"It is conceded by both parties that although organized under the laws of the state of Arizona, the corporation defendant was created and chartered for the purpose of doing business in the state of California, and that therefore the laws of Arizona authorizing corporations organized there to issue stock as fully paid up and nonassessable have no bearing upon the question of the right of the defendant to levy and collect the assessment in controversy here.

"It is further admitted that the fact that the defendant is a 'foreign corporation' doing business in this state does not entitle it to any consideration different from or more favorable than that which would be accorded to a corporation organized and existing under the laws of the state of California."

It is contended by William B. Bosley, Esq., and James S. Spilman, Esq., who have filed briefs as *amici curiae* that the concessions mentioned above were unnecessary. It is asserted by these counsellors that a foreign corporation in California is governed in all matters of internal concern by its charter

and the law under which its charter was granted, citing *Relfe v. Rundle,* 103 U. S. 222, [26 L. Ed. 337] ; *Republican Mountain Silver Mines* v. *Brown,* 58 Fed. 644, [24 L. R. A. 776, 7 C. C. A. 412] ; *Giesen* v. *London & N. W. Am. Mortgage Co.,* 102 Fed. 584, [42 C. C. A. 515] ; *Miles* v. *Woodward,* 115 Cal. 308, [46 Pac. 1076]. They maintain that section 15 of article XII of the constitution does not require a foreign corporation doing business within this state to transact business here upon conditions *identical* with those attached to domestic corporations, but that it must not be allowed to operate upon more *favorable* conditions than those prescribed for Californian corporations; that the power to levy assessments upon fully paid stock is an advantage and not a detriment; and that therefore the limitation contained in the contract between this defendant corporation and its stockholders is a *less* favorable condition than that usually existing with corporations formed within this state and a condition not prohibited by our constitution. This is a very interesting subject but one which we need not examine carefully in the case at bar. In view of the agreement of counsel for the respective parties to this action we shall discuss the question which they consider the crux of the whole matter and we shall assume, only for the purposes of this case, that the problem before us is exactly the one which would exist if the defendant were a corporation organized under the laws of California. Accepting, then, the agreement of counsel regarding the law governing this form of corporation, the question and the only one, as counsel for appellant indicates in his brief, is this: Where a Californian corporation sells shares of its capital stock upon an express agreement that the said stock shall be issued as fully paid and shall be non-assessable and the certificates of stock recite that the stock is fully paid and nonassessable, may the corporation levy an assessment upon such stock where no rights of a creditor are directly involved?

It is undoubtedly true that ordinarily under section 331 et seq. of the Civil Code, the board of directors of a corporation may levy assessments upon the capital stock *after* as well as *before* the par value of such stock has been fully paid. (*Santa Cruz R. R. Co.* v. *Spreckles,* 65 Cal. 193, [3 Pac. 669, 802] ; *Green* v. *Abietine Med. Co.,* 96 Cal. 325, [31 Pac. 100] ; *Campbell* v. *Santa Maria Oil & Gas Co.,* 153 Cal. 282, [95 Pac.

39].)  Is an agreement between a corporation and its stockholders embodied in its articles of incorporation and expressed in its certificate, that its capital stock shall not be assessed after it is paid in full a valid contract as between the stockholders and the corporation?  That a corporation may enter into an agreement with its stockholders to do or to refrain from doing something when such action or abstention is not contrary to express law or to public policy, can scarcely be doubted.  (Civ. Code, sec. 1667; *Stephens* v. *Southern Pacific Co.,* 109 Cal. 89, [50 Am. St. Rep. 17, 29 L. R. A. 751, 41 Pac. 783].)  Such contracts may even go so far as to provide for a surrender by one of the parties of some privilege otherwise granted by law.  It has been held that a corporation may agree to require, as part of all its contracts, a stipulation by its creditors that they will waive their right to enforce the personal liability of the stockholders given by the constitution itself.  (*French* v. *Teschemaker,* 24 Cal. 558; *Wells* v. *Black,* 117 Cal. 161, [59 Am. St. Rep. 162, 37 L. R. A. 619, 48 Pac. 1090].)  In the opinion of the learned district court of appeal it is declared that the contract here under review is inconsistent with the provisions of section 3 of article XII of the constitution and with sections 331 and 332 of the Civil Code.  The material portion of the above cited section of the constitution is as follows: "Each stockholder of a corporation, or joint stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation or association."  It will be seen at a glance that this refers to the direct personal liability of the stockholder to the creditor and not to the relations existing between the corporation and its stockholders.  Section 331 of the Civil Code, while it gives the directors of a corporation the right to levy assessments upon paid-up stock, contains nothing which compels them to do so; while the following section merely announces certain limitations upon the general power of assessment.  It is the contention of the respondents that the provisions of the constitution and code enter into every contract with reference to the sale and purchase of stock, and the district court of appeal in its opinion cited, in this behalf,

*Union Savings Bank* v. *Leiter,* 145 Cal. 699, [79 Pac. 441], but it must be borne in mind that, in the case cited, the suit was one upon an assessment for part of an unpaid subscription to the capital stock levied by a board of directors engaged in the liquidation of the debts of an insolvent corporation. What was said in the opinion in that case was said with reference to the particular facts of that case, which were fully set forth in the opinion. It was determined under the rule well settled in this state that *unpaid subscriptions* upon the capital stock of a corporation are assets available to the creditors, and that they are collectible by assessment in a proceeding solely for the benefit of creditors, notwithstanding the fact that a by-law of the company declared that such subscriptions should not be called, except by a two-thirds vote of the stockholders. In view of the fact that the assessment was one levied by directors of a corporation that had been adjudged to be insolvent, and who were engaged under the judgment of insolvency and under the direction of the bank commissioners in liquidating its affairs for the benefit of its creditors, the proceeding was one directly on behalf of creditors for the purpose of subjecting the unpaid capital to the satisfaction of their claims. In the case at bar the assessment is one levied by a corporation that has not been adjudged insolvent, and that is actually engaged in the transaction of its ordinary business. The question before us in this case was not presented to the court in *Union Savings Bank* v. *Leiter,* 145 Cal. 699, [79 Pac. 441]. It has been discussed, however, in a well considered opinion rendered by the supreme court of Idaho involving the construction of statutes practically identical with ours. *Wall* v. *Basin Mining Company, Ltd.,* 16 Idaho, 317, [22 L. R. A. (N. S.) 1013, 101 Pac. 738], was an action to establish the plaintiff's right as a stockholder in the defendant corporation. The court, following *Santa Cruz R. R. Co.* v. *Spreckels,* 65 Cal. 193, [3 Pac. 661, 802], held that fully paid up stock is assessable, but, that, as between the corporation and the stockholder, there may be an agreement that the stock is fully paid and nonassessable. The opinion contains the following discussion: "In this connection we call attention to the fact that the controversy in this case arises between the corporation and a stockholder, that the rights of a creditor to enforce his claim against a stockholder, or the liability of

a stockholder to a creditor for corporate debts, is not involved. This distinction should be kept in mind in order to apply and distinguish the cases dealing with this subject and cited by counsel, for in the case under consideration the question to be determined is: Can a corporation agree with its stockholders that the stock issued by such corporation shall not be subject to assessment? That is: Can such an arrangement or agreement be made which is binding as between the corporation and the stockholder? Section 2750 of the Revised Codes, provides: 'The directors of any corporation formed or existing under the laws of this state, after one-fourth of its capital stock has been subscribed, may, for the purpose of paying expenses, conducting business, or paying debts, levy and collect assessments upon the subscribed capital stock thereof, in the manner and form, and to the extent, herein provided.' "

It will be noticed that this statute is in the same language as section 331 of our Civil Code, with the trifling and immaterial exception of the transposition of the last two words. Continuing, the court says: "As we have held, this section gives a corporation power to levy an assessment against capital stock fully paid up. Counsel for respondent argue that the word 'may,' as used in this section, means 'must'; and that the corporation *must* levy an assessment for the purpose of paying expenses, conducting business, or paying debts. This section of the statute is in the nature of a grant of power, and authorizes a corporation to make a levy and collect assessments for certain purposes; but it is not compulsory that the corporation do so. The corporation may conclude that it will be to its advantage and to the advantage of its stockholders to permit its corporate property to be sold to satisfy its debts, rather than to levy assessments and sell the corporate stock; and if the argument of counsel for respondent is correct and the word 'may' means 'must,' and the only course left to a creditor or stockholder contracting with a corporation would be to enforce the mandatory duty thus conferred upon the corporation, the creditor and the stockholder, with whom the corporation had contracted, would thereby be denied their action at law; but such construction is not authorized by the language of the section. The purpose and intent of the legislature by enacting this statute was to confer upon the corporations the power to do the things therein enumer-

ated. The inquiry then arises: Does the fact that a certificate of stock, issued by a corporation, bears upon its face the words 'fully paid up and nonassessable' amount to a contract between the corporation and the stockholder; and has the corporation power to make the same? The power of a corporation to make a contract with a stockholder, with reference to the issuing of stock to such stockholder, has been considered in many cases by the courts of this country, and generally upheld." After quoting from several opinions and citing other authorities, the court continues: "Our attention has not been directed to any statutory provision, and we know of none, which prohibits the articles of incorporation from containing a provision to the effect that the stock issued by the corporation is 'nonassessable.' Neither is there any provision of the statute which would prohibit a corporation from so providing in its by-laws. The effect of such provision would be in the nature of an agreement between the stockholders of the corporation and between the stockholders and the corporation, to the effect that the corporate stock of such corporation could not be 'assessed,' thereby agreeing that if obligations of the corporation were to be discharged and the corporation did not have the money with which to pay the same, then the corporate property should be subjected to and applied in discharge of such indebtedness instead of raising the same by assessment against the stock. So, when the corporation certifies that the shares represented by a certificate are 'nonassessable,' such provision becomes a part of the contract between the corporation and stockholder, and as between the corporation and stockholder such agreement may be relied upon and enforced." But respondent insists that the Idaho case is not authority in California, for the reason that in Idaho the stockholder is not personally liable except for the par value of his stock, while in California he is charged with a greater responsibility as defined by section 3 of article XII of the constitution. Speaking of the recital in the certificate of stock that the shares were "nonassessable," the court used the following language: "The argument urged by counsel for respondent and recognized by many authorities, that such provision would be a fraud upon the creditors, has no controlling force in this state, for the reason that a stockholder is not personally liable under the constitution, except for the

amount of stock for which he has subscribed, and if the stock subscribed has been fully paid, the personal liability ceases, and the creditor would have no right of action against a stockholder for any assessment made in excess of the amount of stock owned, and can only resort to the corporate property to satisfy his claim; but even if it be admitted that an arrangement or contract between the stockholders of a corporation, by which it is provided that stock is not assessable, would be void as against creditors, still there is no provision of law which prohibits such contract being entered into and binding the parties thereto, the stockholder and the corporation.'' Answering the argument that a contract thus limiting the power of assessment ordinarily enjoyed by the directors might result in utter loss of the corporate property and the destruction of the value of the stock, the court quoted with approval from the case of *Garey* v. *St. Joe Mining Co.*, 32 Utah, 497, [12 L. R. A. (N. S.) 554, 91 Pac. 377]. A part of the quotation is as follows: ''It may be true, as was suggested by counsel, that in many instances it may be wise and expedient for corporators to make additional contributions of capital to discharge corporate indebtedness, so as to preserve the corporate property, or to make such contributions for the successful conduct of the business. But that is something which the corporators should consider when they make their contracts. Courts are organized to enforce contracts as made, unless they contravene good morals or public policy. They cannot create new contracts, nor can they permit the parties themselves to do so without the consent of all, upon any theory that the original contract was not the most beneficial or advantageous, or that the enterprise contemplated by the terms of the contract cannot be successfully operated under it. By their solemn agreement the parties have here defined and limited their contributions of capital to the corporation for corporate purposes.''

The enforcement of contracts between a corporation and its stockholders is, as we have indicated, no novel thing. In *O'Dea* v. *Hollywood Cemetery Association*, 154 Cal. 55, [97 Pac. 6], the court held valid a contract whereby stock was issued as fully paid in exchange for property which was of less value than the nominal worth of the shares. Speaking of findings announcing the good faith of the directors of the

corporation making the exchange, Mr. Justice Lorigan, who delivered the opinion of this court, said: "These findings were all in harmony with the evidence. Every stockholder of the new corporation assented to this transaction, and the directors authorized, approved and ratified it. Samuelson, himself, was one of the actors in the matter, and these plaintiffs, who have succeeded to the shares of stock, which he then held, cannot be heard to question the validity of the issue of this paid up stock for inadequacy of its price. Directors of a corporation have the right to issue stock as fully paid up, upon such terms and at such price as they see fit, and in the absence of fraud, as far as the stockholders or their assigns are concerned, the action of the directors in issuing it is final, and the action of the corporation cannot be attacked by the stockholders, or the validity of the issue assailed on the ground, merely, that the consideration was inadequate for which the corporation issued it as fully paid up. Creditors may attack the transaction—stockholders cannot. (Cook on Corporations, sec. 35; *Stein* v. *Howard,* 65 Cal. 616, [4 Pac. 662]; *Vermont Marble Co.* v. *Declez Marble Co.,* 135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057]; *Dickerman* v. *Northern Trust* Co., 176 U. S. 181, [44 L. Ed. 423, 20 Sup. Ct. Rep. 311].)"

In *Green* v. *Abietine Medical Co.,* 96 Cal. 325, [31 Pac. 100], this court held that the defendant was estopped by its contract with its stockholders to assert that stock issued as fully paid had been in fact sold for one-fourth of its par value.

In *Dickerman* v. *Northern Trust Co.,* 176 U. S. 202, [44 L. Ed. 423, 20 Sup. Ct. Rep. 319], Mr. Justice Brown, delivering the opinion of the supreme court of the United States, said: "The contract with Stein provided that the stock to be issued to him should declare upon the face of the certificates to be fully paid and unassessable, and we know of no principle upon which it can be held that innocent bondholders can be required to deduct from the face of their bonds the amount unpaid on their stock. The very authorities which hold that the declaration that the stock is fully paid and unassessable is not binding upon creditors, also hold that the corporation cannot repudiate it and proceed to collect either from the person receiving the stock or his transferee the unpaid part of the par value. Thus in *Scovill* v. *Thayer,* 105 U. S. 143, 153,

[26 L. Ed. 968], in which a similar declaration was held to be invalid against creditors, it was said: 'The stock held by the defendant was evidenced by certificates of full-paid shares. It is conceded to have been the contract between him and the company that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders, and the fact was known to all. As between them and the company this was a perfectly valid agreement. It was not forbidden by the charter or by any law of public policy, and as between the company and the stockholders was just as binding as if it had been expressly authorized by the charter.' There is no doubt that, if this were a suit by creditors to enforce payment of the unpaid portion of the stock subscriptions, the fact that the stock certificates declared that they were fully paid and unassessable would be no defense; but it is a suit of stockholders in the right of the corporation, and as between the corporation and its stockholders the declaration that the shares are fully paid up and unassessable is a valid one." (See, also, *First National Bank* v. *Gustin-Minerva Consolidated Mining Co.*, 42 Minn. 327, [18 Am. St. Rep. 510, 6 L. R. A. 676, 44 N. W. 197] ; *Thompson* v. *Knight,* 74 App. Div. 316, [77 N. Y. Supp. 600].)

We decide, therefore, that the agreement between the corporation and its stockholders was valid, and that where, as here, the rights of creditors are not directly involved, the corporation may not, by its directors, levy an assessment against the stock so protected.

It follows that the order from which the appeal is taken should be reversed, and it is so ordered.

Shaw, J., Angellotti, J., Henshaw, J., Lorigan, J., and Sloss, J., concurred.