[Civ. No. 1352.   Second Appellate District.—September 17, 1913.]

MICHAEL C. BROWNE, Respondent, v. SAN GABRIEL RIVER ROCK COMPANY (a Corporation), Appellant.

CORPORATION—SUBSCRIPTION TO STOCK—REPRESENTATION THAT STOCK IS NONASSESSABLE.—A corporation may contract with subscribers to stock that it shall be nonassessable, and a representation to a prospective purchaser of stock that it is nonassessable is a representation of fact, not an expression of opinion as to the law regulating the matter of assessment, and hence, if false, will support an action for rescission.

ID.—STOCK OF CORPORATION—EFFECT OF REPRESENTATION THAT IT IS NONASSESSABLE.—A representation that the stock of a corporation is nonassessable is regarded as an assurance that the corporation has taken whatever steps are necessary to effectually waive its right to levy the assessments provided for by the statute, and this representation is one of fact and not of law. If untrue it is actionable and entitles the purchaser to rescind his contract.

ID.—ASSESSMENT OF STOCK—PAID-UP STOCK.—Under section 332 of the Civil Code, corporate stock is subject to assessment whether or not it is issued as paid-up, the only difference being in the per centum of levy. Where stock is fully paid, the assessment must be for not more than ten per cent of the capital stock; where not fully paid, it may be for the whole difference between the sum actually paid and the par value of the stock.

ID.—SALE OF STOCK BY AGENT—MISREPRESENTATION THAT STOCK IS NONASSESSABLE.—Where an agent, employed to sell corporate stock, represents to purchasers that the stock is nonassessable, it is immaterial, so far as concerns their right of rescission because his representations on this point are false, whether the misrepresentation is within the scope of his authority.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Trask, Norton & Brown, for Appellant.

John C. North, for Respondent.

JAMES, J.—In this action respondent secured a judgment enforcing rescission of a contract for the sale of corporate stock. The cause of action was based upon the alleged fraudulent representation made by the agent of the corporation that the stock was "nonassessable." The appeal is from the judgment and from an order denying defendant a new trial.

The trial court found that the representation had been made as alleged, and if there was any evidence presented which would sustain that finding, it must here be assumed to be correct, for in such a condition this court has not the duty nor privilege of weighing the proof. The sale of defendant's stock was made through the vice-president of the corporation. The only substantial evidence of any representation as to the nonassessable quality of the stock was furnished by the testimony of respondent. He testified that a man named Peck, who appears to have been respondent's agent in negotiating for the purchase of the stock, told him that the shares were nonassessable. If the proof had stopped there it would not have been sufficient to establish the charge that the alleged

false representation had been made by any one acting for the corporation. But plaintiff testified that the vice-president of defendant also said that the stock was nonassessable. This was denied by the official mentioned, and it was upon this conflicting state of the evidence that the court made the finding which resolved the facts against defendant.

The main and controlling question presented for consideration is whether the representation that corporate stock is nonassessable is an expression of opinion as to the law regulating the matter of assessment, upon which no action can be predicated, or is a representation of fact. The determination of this question requires an examination of the statutes of this state, under the laws of which defendant holds its corporate existence. Preliminarily it may be declared that where the law in mandatory terms imposes the duty upon officers of a corporation to levy assessments in any contingency, so that an assessment charge may not be avoided through either the acts of the directors or by agreement with the person subscribing for stock, then and in that case there can be no misrepresentation which will furnish ground for rescission. Our Civil Code, however, in section 331, provides: "The directors of any corporation formed or existing under the laws of this state, after one-fourth of its capital stock has been subscribed, may, for the purpose of paying expenses, conducting business, or paying debts, levy and collect assessments upon the subscribed capital stock thereof in the manner and form and to the extent provided herein." And section 332, immediately following, declares: "No one assessment must exceed ten per cent of the amount of the capital stock named in the articles of incorporation, except in the cases in this section otherwise provided for, as follows: 1. If the whole capital of a corporation has not been paid up, and the corporation is unable to meet its liabilities or to satisfy the claims of its creditors, the assessment may be for the full amount unpaid upon the capital stock. . . . "

It then appears that the matter of deciding whether the debts of the corporation are to be paid by selling its property or by assessment, in the case of a going concern, may rest with the directors. It follows as a necessary legal conclusion, that the corporation can contract with persons subscribing to its capital stock not to do a discretionary act, and hence it can engage that its stock shall be nonassessable. A corporation

may generally make any contract not forbidden by express provision of the law, or not violative of some settled rule of public policy. This subject is fully treated of in a recent decision of the supreme court of this state, where the authorities are collected and extensively quoted from, all of which sustain the proposition that under statute law like that of California, corporations may make a valid agreement to issue their stock as nonassessable. The decision referred to was rendered in the case of *Lum* v. *American Wheel etc. Co.*, 165 Cal. 657, [133 Pac. 303].

No rights of creditors are here involved. It is argued on behalf of appellant that even though it be conceded that defendant's agent made the representation that the shares of stock sold to respondent were nonassessable, such statement should be taken to mean only that the shares would be issued as paid-up stock, and hence not be subject to calls. Respondent in fact did pay the full par value for the stock. But our code expressly provides that assessments may be levied upon paid-up stock, the only difference being in the percentum of the levy,—where stock is fully paid, the assessment must be for not more than ten per cent of the capital stock; where not fully paid, it may be for the whole difference between the sum actually paid and the par value of the stock. A representation that the stock of a corporation is nonassessable should be held to be an assurance that the corporation has taken whatever steps that are necessary to effectually waive its right to levy the assessments provided for by the statute, and this representation would be one of fact and not of law. If untrue, it would be actionable and entitle the purchaser to rescind his contract. The question as to whether the making of the misrepresentation was within the scope of the agent's authority is immaterial, as it is only necessary that the agent have authority to negotiate the sale of the stock. In Cook on Corporations, volume 1, section 140, the author declares: "It matters not whether he (the agent) had any authority, or exceeded his authority, or concealed its limitations. The corporation cannot claim the benefits of his fraud without assuming also the representations which procured those benefits. Parol evidence is admissible to show the fraud, since it does not vary or contradict the contract, but shows that no contract was legally entered into." (See, also, Thompson on Corporations,

vol. 2, sec. 1367.) Moreover, shares of corporate stock are personal property (Civ. Code, sec. 324), and by section 2323 of the Civil Code it is provided that: "An authority to sell personal property includes the authority to warrant the title of the principal and the quality and quantity of the property." As the trial judge determined that the misrepresentation had been made by the corporation, we must assume that he determined that it was made by the vice-president, as Peck does not appear to have been the agent of the corporation, but rather the agent of respondent. It is very clear that he was acting for the latter, and he could not well be the agent of both parties. The main question of fact is foreclosed of any examination here beyond the point where it becomes evident that the trial court made its findings upon conflicting testimony. There is in the record a statement made at the close of the trial, and before argument, by the judge who heard the cause, to the effect that he did not believe on the evidence he could find that the vice-president made the misrepresentation, but that he would find that Peck did. The findings when made up and signed determined, as has been adverted to, that the defendant corporation made the misrepresentation. Therefore, it must be assumed that the court did *finally* conclude that the misrepresentation was made by the vice-president, as he was the only person who appears to have acted for the corporation in the transaction.

Prejudicial error not appearing, the judgment and order must be affirmed. It is so ordered.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 15, 1913.

Beatty, C. J., dissented from the order denying a hearing in the supreme court, and on November 18, 1913, filed the following opinion thereon:

BEATTY, C. J.—I dissent from the order denying a rehearing and from the judgment. This is one of the least meritorious of a class of actions with which the time of the courts

would never be taken up if parties of mature age, *sui juris,* and dealing with others at arm's length in ordinary business transactions, would only take the most obvious precautions for the protection of their own interests, a class of actions—it may be added— by which a fraud may be perpetrated as easily as the fraud alleged may be redressed. The decision of this cause, in my opinion, makes a mischievous precedent in two ways; it encourages the parties to similar transactions to neglect without excuse the precautions which would keep them out of trouble, and it opens the door to the prosecution of actions for rescission based upon false claims of misrepresentation. It well illustrates the soundness of the policy upon which many decisions of this and other courts have been based in denying relief to vendees of real property who have neglected, without excuse, to avail themselves of easy access to sources of perfectly trustworthy information as to facts upon the alleged misrepresentation of which they have afterward claimed the right to rescind. The principle of those decisions is that no person of sound mind and dealing at arm's length with his vendor can pose as the victim of false representations when he has shut his eyes to the plain evidence of the real facts. The same principle, in my opinion, is applicable to the sale of shares of stock. Here the claim of plaintiff is based upon the allegation that defendant's stock was represented to be unassessable. But two ways in which, under the laws of this state, the shares of corporate stock can be made unassessable have been suggested—one by a special agreement with the purchaser, the other by special provisions in the charter. (*Lum v. American Wheel etc. Co.,* 165 Cal. 657, [133 Pac. 303].) Here there is no pretense of special agreement, and an examination of the articles of incorporation which were of easy access (I assume this because there is nothing alleged to the contrary and because the parties were at Monrovia where defendant's principal place of business had been fixed) would have shown that the shares were not unassessable, and the time of three courts would not have been taken up in deciding which of two conflicting stories was the true one.