# W. H. PORTER et al. v. NORTHERN FIRE & MARINE INSURANCE COMPANY, a Corporation.

### (161 N. W. 1012.)

Corporation — stock in — subscription to — agreement in — paid up — "nonassessable" — stockholders — assessment on stock — may restrain same.

1. Where a corporation sells its stock under a subscription agreement which provides that the stock shall be fully paid and nonassessable, and where the stock certificates are stamped "fully paid and nonassessable," minority stockholders may restrain the collection of an assessment levied by the directors.

Stock — "nonassessable" and "fully paid up" — so issued — negatives further liability — par — stock sold at.

2. The term "nonassessable" is held to negative liability for any added contribution to the capital of the corporation above the subscription liability,

---

Note.—The case of Porter v. Northern F. & M. Ins. Co. is in accord with the general rule, to the effect that, in the absence of statutory authority or special power conferred upon the directors of a corporation by the articles of incorporation, they have no power to make calls or assessments on fully paid-up stock, or stock which is issued as fully paid up, or to subject it to sale or forfeiture for nonpayment of the same, for the reason that the liability to calls is the result of contract such as an agreement of subscription or the like, and the power to make assessments is wholly statutory, as will be seen by an examination of notes in 45 L.R.A. 647, and 22 L.R.A.(N.S.) 1013, on the general topic, "Assessments on paid-up stock."

or above the par value of the stock, where the subscription liability is fully paid and the stock has been sold at par or above.

**Terms — "call" and "assessment" — use of — synonymous — contributions.**

3. While the terms "call" and "assessment" are generally used synonymously, the latter term applies with peculiar aptness to contributions above the par value of stock or the subscription liability of the stockholders.

**Insurance company — stockholders — liability — creditors of company — par value — excess of.**

4. The stockholders of an insurance company, organized under the laws of this state, sustain no liability to creditors or policy holders in excess of the par value of stock, or when the par value is fully paid, above the amount they have agreed to pay for the stock.

**Laws — insurance company — stockholders — assessment — impaired capital — purpose of.**

5. Sections 4865 and 4866 of the Compiled Laws of 1913 are not mandatory, but only convey authority to the directors of an insurance corporation to levy an assessment upon the stockholders for the purpose of repairing impaired capital.

**Assessments — authority to levy — contract — proper subject of — insurance company — stockholders — between.**

6. The authority to levy an assessment under §§ 4865 and 4866 of the Compiled Laws of 1913 is a proper subject of contract between an insurance corporation and the stockholders thereof, and when the insurance company has contracted with the stockholders that the stock shall be nonassessable, the company may not proceed to levy and collect an assessment.

Opinion filed March 7, 1917.

Appeal from the District Court of Pembina County, Honorable W. J. Kneeshaw, Judge.

Affirmed.

*Bangs, Hamilton, & Bangs* (*C. J. Fisk,* of counsel) for appellant.

The object of our statutes is to provide a simple method by which the capital of a corporation might be kept intact, and not become impaired. Comp. Laws 1913, §§ 4864 and 4866.

Like statutes exist in many of the states, and have been construed in keeping with appellant's contentions made in this case. Rev. Stat. § 5205; Comp. Stat. 1916, § 9767; Corbin Bkg. Co. v. Mitchell, 141 Ky. 172, 31 L.R.A.(N.S.) 446, 132 S. W. 426; Dewey v. St. Albans Trust Co. 57 Vt. 332; 3 R. C. L 387; Northwestern Trust Co. v. Bradbury, 117 Minn. 83, 134 N. W. 513, Ann. Cas. 1913D, 69; Slette v. Larson, 125 Minn. 263, 146 N. W. 1093.

The power to pass such laws rests within legislative discretion. Noble State Bank v. Haskell, 219 U. S. 104, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, 31 Sup. Ct. Rep. 186, Ann. Cas. 1912A, 487.

"A corporation cannot levy an assessment upon the holders of fully paid stock, unless the power to do so is conferred by the charter, or articles of association, or by a valid statute, or by consent of the stockholders." 2 Clark & M. Corp. §§ 402, 404, p. 1270; Minn. Stat. 1905, § 3000; 7 R. C. L. pp. 211, 212; Corbin Bkg. Co. v. Mitchell, 141 Ky. 172, 31 L.R.A.(N.S.) 446, 132 S. W. 426; Dewey v. St Albans Trust Co. 57 Vt. 332; Delano v. Butler, 118 U. S. 634, 30 L. ed. 260, 7 Sup. Ct. Rep. 39.

In fact that stock is fully paid up is no reason why it cannot be assessed, when necessary, to keep the capital intact and unimpaired. Sullivan v. Triunfo Gold & S. Min. Co. 39 Cal. 465; Santa Cruz R. Co. v. Spreckles, 65 Cal. 193, 3 Pac. 661, 802.

*McIntyre & Burtness* and *J. L. Cashel, Jr.,* for respondents.

Fully paid up stock is nonassessable in the absence of statutory authority, or special power conferred upon the directors. More v. The Courier News, 29 N. D. 385, 151 N. W. 2; Enterprise Ditch Co. v. Moffit, 45 L.R.A. 648, note; Wall v. Basin Min. Co. 22 L.R.A.(N.S.) 1013, note; Cook, Corp. 6th ed. §§ 241 et seq.; Comp. Laws 1913, §§ 4570 and 4571.

A corporation has the right to waive the benefit of any and all statutes, unless such act is contrary to public policy. In other words, a contract making the stock nonassessable is valid and controlling between the stockholder and the corporation, and the courts will enforce such contracts. Wall v. Basin Min. Co. 16 Idaho, 313, 22 L.R.A.(N.S.) 1013, 101 Pac. 733; Lum v. American Wheel & Vehicle Co. 165 Cal. 657, 133 Pac. 303, Ann. Cas. 1915A, 816; Browne v. San Gabriel River Rock Co. 22 Cal. App. 682, 136 Pac. 542; Garey v. St. Joe Min. Co. 32 Utah, 497, 12 L.R.A.(N.S.) 554, 91 Pac. 369; Dickerman v. Northern Trust Co. 176 U. S. 181, 200, 44 L. ed. 423, 434, 20 Sup. Ct. Rep. 311; Scovill v. Thayer, 105 U. S. 143, 26 L. ed. 968.

Both forms of assessment as framed by our statutes may be so waived. Comp. Laws 1913, §§ 4570, 4865 and 4866; Wall v. Basin Min. Co. 16 Idaho, 313, 22 L.R.A.(N.S.) 1013, 101 Pac. 733; Lum v. American Wheel & Vehicle Co. 165 Cal. 657, 133 Pac. 303, Ann. Cas. 1915A,

816; Browne v. San Gabriel River Rock Co. 22 Cal. App. 682, 136 Pac. 542.

No statutory enactment can be valid that would destroy the contract between the corporation and the stockholder which was made at the time of the sale and purchase of the stock. State ex rel. Miller v. Leech, 33 N. D. 513, 157 N. W. 492; State ex rel. Miller v. Taylor, 27 N. D. 77, 145 N. W. 425; State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089; Garey v. St. Joe Min. Co. 32 Utah, 497, 12 L.R.A.(N.S.) 554, 91 Pac. 369.

Stock which is fully paid up is nonassessable, and unless there is some express provision of law authorizing an assessment none can be levied. 1 Cook, Corp. 6th ed. §§ 241 and 242; Enterprise Ditch Co. v. Moffit, 58 Neb. 642, 45 L.R.A. 648, 76 Am. St. Rep. 122, 79 N. W. 560; Wall v. Basin Min. Co. 16 Idaho, 313, 22 L.R.A.(N.S.) 1013, 101 Pac. 733, Ann. Cas. 1915A, 816.

"That it was the intention of the legislature to make an assessment under the provisions of § 4866 permissible, and not mandatory, is shown by the history of this statute." Laws of 1883, § 31; Comp. Laws 1913, §§ 4865 and 4866; Comp. Laws 1887, § 3067; Wall v. Basin Min. Co. 16 Idaho, 313, 22 L.R.A.(N.S.) 1020, 101 Pac. 733; Lum v. American Wheel & Vehicle Co. 165 Cal. 657, 133 Pac. 303, Ann. Cas. 1915A, 816.

A corporation can contract with persons subscribing to the capital stock not to do a discretionary act, and hence it can contract that its stock shall be nonassessable. Browne v. San Gabriel River Rock Co. 22 Cal. App. 682, 136 Pac. 542; Lum v. American Wheel & Vehicle Co. supra.

The personal liability of the stockholder as to the corporation is the subscribed price of the stock; as to creditors it is fixed and limited by law. Comp. Laws 1913, § 4554; Wall v. Basin Min. Co. 16 Idaho, 313, 22 L.R.A.(N.S.) 1013, 101 Pac. 733.

The state has no greater general interest in an insurance corporation than it has in any other corporation. The state's interest is that, if the corporation itself desires to continue in business, it must be in a solvent condition. Courts have frequently held to this reasoning. Garey v. St. Joe Min. Co. 32 Utah, 497, 12 L.R.A.(N.S.) 554, 91 Pac. 369.

A contract that stock shall be nonassessable is a valid, legal engagement. The statute does not prohibit such a contract. The only limita-

·tion is that no agreement shall be made that the full par value shall not be paid. Comp. Laws 1913, § 4527.

Valid contracts made between parties cannot be impaired or changed, ·except by the act of the parties. N. D. Const. §§ 13 and 16.

The Commissioner of insurance is an administrative officer, rather ·than a judicial officer. He is not vested with any judicial power.

If this be not true, then §§ 4865 and 4866, Compiled Laws, are un-·constitutional and void. State ex rel. Miller v. Leech, 33 N. D. 513, 157 N. W. 492; State ex rel. Miller v. Taylor, 27 N. D. 77, 145 N. W. 425; State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089; Garey v. St. Joe Min. Co. 32 Utah, 497, 12 L.R.A.(N.S.) 554, 91 Pac. 369.

BIRDZELL, J. This is an appeal from an order of the district court ·of Pembina county, enjoining appellants from taking further proceedings to collect an assessment levied upon the stock of the respondents and ·other stockholders by the directors of the Northern Fire & Marine Insurance Company, a domestic corporation. The facts are as follows: The defendant insurance company was organized about five years ago; .and, in order to obtain capital with which to do business, it sold stock to a large number of individuals, including the plaintiffs (sixty-four in ·number), who purchased 1,355 shares of stock at the par value of $10 each. The subscription agreements provide that the stock shall be "fully paid and nonassessable," and in pursuance of these agreements certifi-·cates of stock have been issued to the plaintiffs upon the face of which are printed or stamped the following words: "Fully paid and non-·assessable." The plaintiffs paid for their stock an amount in excess of ·the par value thereof, and the stock certificates bear evidence of this fact in the statements contained thereon that the par value is $10 and the market value $25.

During the year 1916 the insurance company met with extraordinary losses, which resulted in financial embarrassment. Its condition be-·came known to the Commissioner of Insurance, and in the exercise of his statutory authority a notice was given to the company on December 2, 1916, as follows: "An examination of your company made by this department as of September 20, 1916, discloses the fact that the capital ·stock was impaired in an amount of substantially 100 per cent.

"Alternative plans for making good this impairment having failed, you are hereby notified that it is incumbent upon your company to make good its capital in the mode provided by § 4566, Compiled Laws of 1913; namely, by assessment of its stock.

"Steps should be taken forthwith to levy an assessment upon the capital stock of your company in such amount as will serve to make good the present impairment."

On December 7, 1916, the company's board of directors levied an assessment of 100 per cent upon the capital stock, and gave the following notice thereof to the stockholders:

Notice is hereby given that at a meeting of the directors of the Northern Fire & Marine Insurance Company, held on the 7th day of December, 1916, an assessment of $10 per share was levied upon the capital stock of the corporation, pursuant to notice received from the Commissioner of Insurance of the state of North Dakota, that the capital of said company was impaired and would have to be made good.

Further, said assessment is made payable on the 12th day of December, 1916, to the treasurer of said corporation at its office in the city of Grand Forks, state of North Dakota, and any stock upon which this assessment is not paid within sixty days after the 12th day of December. 1916, shall be forfeitable, and may be canceled by a vote of the directors, and new shares issued to make up the deficiency.

Dated this 8th day of December, 1916.

N. N. Hand,

Secretary of the Northern Fire & Marine Insurance Company,
Grand Forks, North Dakota.

Pursuant to the above levy and notice, the company has collected a portion of the assessment so made, but the 64 plaintiffs, owning 1355 shares, above referred to and 81 additional stockholders, owning 1486 shares, who were subsequently made parties to the action by stipulation, seek to enjoin the collection of the assessment  The trial judge granted a restraining order enjoining the corporation and its directors from enforcing the assessment, and from this order the defendants appeal to this court.

Upon this appeal the question is raised for the first time in this jurisdiction as to whether or not the stock of an insurance company which, by

contract between the company and its stockholders, is issued as fully paid and nonassessable, is subject to assessment for any purpose, either to the extent of creating a personal liability, or a stock liability involving the possible forfeiture of the rights of the stockholders to participate further in the management of the affairs of the corporation, and including the right to share in the assets upon liquidation.

The sections of the statute governing assessments of capital stock of corporations in general are as follows: Section 4570 provides for the levying of assessments by directors after one fourth of the capital stock has been subscribed, which assessments may be levied for the purpose of paying expenses, conducting business, or paying debts. Section 4571 limits the assessments to 10 per cent except for certain purposes, as to which the authority is either unrestricted or specifically limited. In this section it is provided that the directors of a fire and marine insurance company may assess such percentage of the capital stock as they deem proper. Sections 4572 to 4588, both inclusive, provide the manner of levying assessments and the method of collection. The method of collection provided for is that of notice and sale. The last-named section provides that the board of directors may, on the day of delinquency, or on any day prior to the day of sale, elect to proceed by action to recover the amount of the assessment and costs.

Additional sections of the Code contained in chap. 18, art. 10, of the Compiled Laws of 1913, embrace specific regulations peculiar to domestic insurance companies. Section 4835 of this chapter subjects insurance companies to the general provisions of law governing corporations, in so far as the general provisions are pertinent, in the following language: "The general provisions of law relating to the powers, duties and liabilities of corporations shall apply to all incorporated domestic insurance companies, so far as such provisions are pertinent and not in conflict with other provisions of law relating to such companies." Section 4865 makes it the duty of the Insurance Commissioner to notify a domestic insurance company that its capital is legally subject to be made good in the mode prescribed in the next section, whenever it appears to such officer that the capital is impaired to the extent of one fourth; and that if such company shall not, within a stated time, repair its capital, he will institute proceedings against it to effect its dissolution. Section 4866, upon which the main argument of the appellants in this case is

based, is as follows: "Whenever the net assets of the company do not amount to more than three fourths of its original capital, *it may make good its original capital to the original amount by assessment of its stock. Shares on which such an assessment is not paid within sixty days after demand shall be forfeitable, and may be canceled by a vote of the directors, and new shares issued to make up the deficiency.* If such company shall not, within three months after notice from the Commissioner of Insurance to that effect, make good its capital as aforesaid, or reduce the same as allowed by the next section, its authority to transact new business of insurance shall cease."

This court has not heretofore been called upon to construe or apply any of the sections mentioned, except §§ 4570, 4571, and 4572, which are admittedly applicable to corporations in general. In the case of More v. The Courier News, 29 N. D. 385, 151 N. W. 2, it was held that under the last-named sections the "fully paid" stock of a corporation was subject to assessment where there were no by-laws of other contractual arrangements between the corporation and the stockholders rendering the same nonassessable. This case is concededly distinguishable from the case at bar, in that here the subscription agreement and the stock certificates provide that the stock shall be nonassessable.

Counsel for appellants contend that the contract between tl? insurance company and its stockholders, whereby the stock is rendered nonassessable, refers only to assessments that might be made in pursuance of the authority of the statutes governing corporations in general (§§ 4570 et seq.), and that the contract does not contemplate assessments that might be made for the purpose of repairing the impaired capital of insurance companies. The argument is advanced that assessments under the former provisions are for the benefit of creditors and stockholders, whereas those levied under the latter provisions are for the protection of policy holders and the public. They argue for an interpretation of the contract which, as they contend, will give the policy holders and the public the broadest possible protection by limiting the nonassessment obligation to those assessments alone which can be made by all corporations under the general provisions of law.

If the appellants are right in their interpretation of the contract to the effect above indicated, there can be no doubt of the power of the corporation to levy and collect an assessment in the manner attempted. The

result in this case must therefore depend upon the proper application of the contract of nonassessment in question under the statutes above referred to. The language of the contract is sufficiently broad and comprehensive to cover every character of assessment which might be made; and unless some sufficient reason exists for giving the contract only the limited application contended for, it must be held to apply to assessments of the character here involved.

In determining whether or not the parties to the contract, namely, the corporation and the stockholders, intended by the use of the word "nonassessable" to negative only the right of the corporation to make assessments for the purposes indicated in § 4570, and to leave unaffected the power to assess for the purpose of repairing impaired capital stock, we must endeavor to ascertain the meaning which generally attaches to the term. The terms "call" and "assessment" are frequently used interchangeably, but in ordinary parlance the word "assessment" has the broader meaning of the two. "Call" is used in referring to a contribution of a portion of the subscribed capital which may be demanded by the directors, as the needs of the corporation require, whereas the term "assessment," while frequently used as synonymous with "call," is more properly applicable to those contributions which are exacted of stockholders over and above the subscribed or the par value of the capital stock. 1 Cook, Corp. 6th ed. § 104; 2 Beach, Priv. Corp. § 590; 4 Thomp. Corp. 2d ed. § 3686.

While it is true that the term "assessment" as used in §§ 4570 and 4571 have been held, both in this jurisdiction and in California and Idaho (More v. The Courier News, supra; Santa Cruz R. Co. v. Speckles, 65 Cal. 193, 3 Pac. 661, 802; Wall v. Basin Min. Co. 16 Idaho, 313, 22 L.R.A.(N.S.) 1013, 101 Pac. 733, to embrace contributions to capital which may be called for by the terms of the original subscription agreement, it is nevertheless also true that the term is more properly applied to contributions exacted in excess of the obligations of the subscription agreement. The meaning of the term then, being broad enough to include assessments for the purposes of repairing capital, and being peculiarly applicable indeed to all contributions above the subscription or par value, an agreement that stock shall be nonassessable must be held to preclude an assessment of the character in question, unless the statutes establish a contrary meaning.

A careful examination of the statutes convinces us that the right of a corporation to levy an assessment to repair its impaired capital stock stands upon no higher footing than its right to levy assessments for other purposes.   It is a fundamental rule that all statutes which purport to authorize compulsory contributions from stockholders in excess of a subscription liability, and particularly in excess of the par value of the stock, were regarded as harsh, and are consequently to be strictly construed.   Machen, on the Modern Law of Corporations, expresses the rule as follows:  "The power to levy assessments on the holders of fully paid shares is sometimes conferred by statute.  Such statutes, being in derogation of the common law, will be strictly construed."   1 Machen, Corp. § 804.   See also 2 Clark & M. Priv. Corp. 6th ed. § 214; 1 Cook, Stock & Stockholders, 3d ed. §§ 214 and 241; Brunswick Terminal Co. v. National Bank, 192 U. S. 386, 48 L. ed. 491, 24 Sup. Ct. Rep. 314.

If the statutory provisions in question are remedial in character and intended for the benefit of policy holders and the public, of course they should be construed in the spirit of their enactment for the purpose of accomplishing the intended beneficial results.   But we fail to see wherein such an intention can properly be deduced from the statutes.   When the legislature desired to attach an added liability for debts to the stockholders in a banking corporation, it left no doubt of its meaning.   In § 6158 of the Compiled Laws of 1913, it is provided that such stockholder shall be liable "to the extent of the amount of his stock therein, at the par value thereof, in addition to the amount invested in and due on such shares."   There is lacking, both in the statutes governing corporations in general and those governing insurance companies in particular, any such clear statement of an obligation of the stockholder for any amount in excess of the contract value or the par value of his stock.   We fail to see wherein the legislature has made or attempted to make a stockholder in an insurance corporation liable for additional contributions to capital, either in the interest of the public or in the interest of the policy holders. The Insurance Commissioner has no power to levy an assessment, nor can the directors of the corporation be compelled to do so.   A policy holder has no legal means of enforcing a liability beyond the par value, except upon unpaid stock subscriptions.   The interests of the public are presumably intended to be safeguarded through the enforcement by the

Insurance Commissioner of the regulatory provisions of the law. Where certain facts exist, this officer can dictate the terms upon which the insurance company may be permitted to continue in business, and to this end he may impose as a condition the repairment of the capital by assessment; and this condition may even be avoided or not by a decision of the majority of stockholders to reduce the capital stock to an amount not below a required minimum. Section 4867, Compiled Laws of 1913.

If §§ 4865 and 4866 were intended for the benefit of policy holders and the public, it is inconceivable that the legislature would have left the matter of the assessment optional with those intrusted with the control of the corporation. Furthermore, it does not appear in this case that the assessment is being made primarily for the benefit of the policy holders, and it is difficult to see wherein the public interests demand the collection of an assessment which will enable the defendant corporation to continue in business. We can see no reason for distinguishing upon these grounds between assessments to be made under §§ 4570 and 4571 and those under §§ 4865 and 4866. We find nothing in the authorities that in the slightest degree militates against the conclusions reached.

In the case of Dewey v. St. Albans Trust Co. 57 Vt. 330, cited by the appellant, the supreme court of Vermont had occasion to consider the meaning of a statute requiring the directors of a trust company to repair by assessment the capital stock of the corporation. It was held that the statute did not impose any liability for debts, but only stated the condition upon compliance with which a company would be permitted to continue its business. See 1 Machen, Corp. § 804. The other cases cited by appellant (Corbin Bkg. Co. v. Mitchell, 141 Ky. 172, 31 L.R.A. (N.S.) 446, 132 S. W. 426; Northwestern Trust Co. v. Bradbury, 117 Minn. 83, 134 N. W. 513, 29 Ann. Cas. 69; Slette v. Larson, 125 Minn. 263, 146 N. W. 1093; Delano v. Butler, 118 U. S. 634, 30 L. ed. 260, 7 Sup. Ct. Rep. 39) all involve some phase of the statutory liability of shareholders in banking corporations, binding them to make contributions in excess of the capital of the bank, either for the purpose of keeping intact the so-called "trust fund for the benefit of creditors" or of enforcing such liability directly for their benefit In the absence of a statute increasing the liability of stockholders to the extent contended for, the foregoing authorities cannot be said to apply.

Many of the arguments advanced by appellants in support of the lia-

36 N. D.—14.

bility of the holders of shares of nonassessable stock to contribute additional funds for the repairment of capital find a satisfactory answer in the case of Garey v. St. Joe Min. Co. 32 Utah, 497, 12 L.R.A. (N.S.) 554, 91 Pac. 369. In answer to the argument founded upon the welfare of creditors and the public, the supreme court of Utah says: "Neither the enactment [authorizing amendments of corporate charters by two-thirds vote] nor the stockholders' amendment of the articles purport to be for the benefit . . . of the public. Thereunder, no right or privilege in favor of creditors or the public is created, and, thereunder, no creditor could assert any right or claim that could not have been asserted by him prior to the enactment. In the original articles of incorporation each stockholder agreed, one with the other, that his full-paid capital stock should be nonassessable. This provision might have been omitted or inserted as the corporators saw fit to agree among themselves. Neither the state nor the public were concerned, whether they agreed upon one or the other. . . . It was manifestly intended to concern and fix the reciprocal rights of the stockholders among themselves, and to place a limit upon the amount of money or capital that each was required to put into the enterprise and contribute to the corporation. The whole consideration for the agreement that no further contribution of capital to the corporation should be exacted was the mutual promise of the stockholders, the one to the other. Neither the state nor the public had anything to do with it, nor was either in anywise concerned therewith. The corporators had the undoubted right, as among themselves, to stipulate and agree as to the extent of their contributions." In the case cited, an argument was advanced similar to that advanced here, that if the assessment is not permitted the corporation may be precluded by execution sale of its assets or otherwise from pursuing the objects for which it was incorporated, and that, by reason of involuntary alienation, the unwilling members as well as the other members would be forced to part with their holdings, in whole or in part. To this argument the court replied as follows: "The argument points to matters of mere utility; not to the rights of the stockholders. Whether an execution sale of the corporate property in satisfaction of corporate debts may or may not produce a more serious result than enforcing contributions from the corporate members is beside the question." It was further said that the corporation that became insolvent might go into liquidation, in which case its

indebtedness would perforce be paid out of the assets, and that as a result of the liquidation a new corporation might be formed by the contribution of new capital. "But," said the court, "the dissenting corporators cannot, contrary to the agreement as here made by them, be forced to make such contributions against their will, any more than they can be forced against their will into a new corporation. When, therefore, a majority seek to compel additional contributions to a corporation for corporate purposes from a dissenting minority, when, by the terms of their original agreement such contributions cannot be exacted, they in effect seek to force them into a new corporation."

In answer to the argument of expediency, the supreme court of Utah very aptly remarks: "That is something which the corporators should consider when they make their contracts. Courts are organized to enforce contracts as made, unless they contravene good morals or public policy."

Unless the contract in question is to be construed as embracing an obligation binding the corporation to exact no further contributions from its stockholders, such contracts would readily become a fruitful source of fraud. Such representations are vital (see Browne v. San Gabriel River Rock Co. 22 Cal. App. 682, 136 Pac. 542), and convey to the purchaser the justifiable impression that upon the purchase of such stock he becomes entitled to all of the rights of a stockholder, without in any circumstances being compelled to make additional contributions to the capital. There can be no doubt that under the statutes, insurance companies, as well as corporations in general, are privileged to enter into such contracts with their stockholders. As was said by the supreme court of Idaho in the well-considered case of Wall v. Basin Min. Co. supra: "If the words 'nonassessable' when contained in a stock certificate are not matters of substance and agreement, and within the power of the corporation to make them, they are meaningless, and can only be used by the corporation to allure the unsuspecting investor into parting with his money, receiving in return a certificate which falsely represents the nature and character of the stock purchased."

As to the effect of such an agreement, the Idaho court stated it very forcibly as follows: "The effect of such provision would be in the nature of an agreement between the stockholders of the corporation and between the stockholders and the corporation, to the effect that the corporate stock

of such corporation could not be 'assessed,' thereby agreeing that, if obligations of the corporation were to be discharged, and the corporation did not have the money with which to pay the same, then the corporate property should be subjected to and applied in discharge of such indebtedness, instead of raising the same by assessment against the stock." In the remaining portion of its opinion, the court indicated very clearly that the agreement would be given the effect above indicated, even though it might involve a forced sale of the entire corporate property, which would render the stock worthless and perhaps entail a cessation of the business.   See also Enterprise Ditch Co. v. Moffit, 58 Neb. 642, 45 L.R.A. 647, 76 Am. St. Rep. 122, 79 N. W. 560, and Lum v. American Wheel & Vehicle Co. 165 Cal. 657, 133 Pac. 303, Ann. Cas. 1915A, 816. It is true that in the cases of Garey v. St. Joe Min. Co. and Wall v. Basin Min. Co. supra, the courts were considering the power to make assessments under sections similar to § 4570 of the Compiled Laws of 1913; but, as before indicated, we see no reason for distinguishing between a power to levy an assessment under this section, and a power to levy for the purpose of repairing the capital stock under §§ 4865 and 4866. Both are equally within the proper bounds of contract between the corporation and the stockholders, and in our judgment are embraced within the contracts in question.

The appellants seek to obviate the force of the above-quoted authorities by the argument that the statute must be construed as contemplating the right of the corporation to meet at all times the requirements of the state government which may be imposed as a condition of enabling it to continue the business for which it was organized. It is contended that the statutory language, "may make good its original capital to the original amount by assessment of its stock," must be construed as authorizing the insurance company to levy assessments for this purpose whenever, in the judgment of the Insurance Commissioner and the board of directors, it might be deemed necessary to do so. It is claimed that to hold otherwise would, in cases of emergency or when situations should arise involving the right of the corporation to continue in business, subject the corporation to the whim or caprice of minority stockholders, and that such holding would virtually operate to take away from the majority the power of control, and deprive the corporation of the power to pursue its legitimate aims.

If additional response to this contention be required, it need only be said that insurance companies, no less than other corporations, are subject to the consequences of adversity, folly, and mismanagement, and if such a corporation desires to secure itself against contingencies which might preclude it from longer pursuing its course, it should not enter into contracts such as those made with the plaintiff stockholders. It is not the business of the court to make for this corporation in this emergency a contract more favorable to itself than it saw fit to make at the time it solicited its business capital and obtained its stock subscriptions.

The order appealed from is affirmed.