(No. 6595. July 10, 1939.)

A. C. FROST & COMPANY, a Corporation, A. C. FROST and C. C. SHEDD, Respondents, v. COEUR D'ALENE MINES CORPORATION, a Corporation, et al., Appellants.

[92 Pac. (2d) 1057.]

James A. Wayne, for Appellants.

C. H. Potts and H. J. Hull, for Respondents.

HOLDEN, J.—Appellant Coeur d'Alene Mines Corporation was incorporated under the laws of the state of Idaho in October, 1928, with an authorized capital stock of $3,000,000 divided into 3,000,000 shares of the par value of $1 each. All the authorized capital stock of the corporation was issued to subscribers therefor, as fully paid and non-assessable, and in the same month of the same year, af-

ter incorporation, certificates of stock were immediately issued and delivered to subscribers or their assignees.

September 8, 1934, respondent A. C. Frost & Co. was incorporated under the laws of the state of Washington.

Prior to May 6, 1929, appellant issued and delivered to A. C. Frost, 40,000 shares of its capital stock with the words printed on the face: "Fully paid up and non-assessable." In 1929 what is styled "The Business Corporation Act" was enacted (1929 Sess. Laws, p. 545). It did not carry an emergency clause and, therefore, did not become effective until May 7, 1929. Section 33 (now sec. 29–145, I. C. A.) authorizes corporations to amend their articles by a two-thirds vote of the stockholders.

September 10, 1934, appellant Coeur d'Alene Mines Corporation gave W. J. Boland a written option to purchase 1,300,000 shares of its capital stock at 10¢ per share, the purchase price to be paid in deferred instalments, excepting the sum of $2,500, paid at the time. While the option was nominally executed between Coeur d'Alene Mines Corporation and Boland, Boland acted for and as the trustee of respondent A. C. Frost & Co., through which option the last-named corporation became the owner of 135,000 shares (in addition to the 40,000 shares it theretofore acquired from Frost) of the capital stock of appellant Coeur d'Alene Mines Corporation, with the words also printed on the face of the certificates: "Fully paid up and non-assessable." By the terms of the option Coeur d'Alene Mines Corporation contracted with Boland that all of the stock covered by it "shall be issued to party of the second part (Boland) or his nominee, as paid for, and shall be issued 'fully paid and non-assessable.' "

In March, 1937, at a specially called meeting for that purpose, the stockholders of appellant corporation, by more than a two-thirds vote (respondent dissenting), voted to make the stock thereof assessable, and subsequently levied two assessments thereon which respondent refused to pay bringing this suit to restrain their enforcement.

January 31, 1938, the cause was tried. March 3, 1938, findings of fact and conclusions of law were made and filed. On the same day a decree was entered thereon forever re-

straining and enjoining appellant from levying an assessment or assessments against or upon the 175,000 shares of the stock of appellant so owned by respondent, from which an appeal was prosecuted to this court.

While the statutes (Rev. Codes, sec. 2750, and sec. 44, "Business Corp. Act" 1929 Sess. Laws, p. 545) were different when the two blocks (40,000 and 135,000) were purchased, if the 1929 statute constitutionally authorizes a change of the 40,000 shares from non-assessable to assessable shares, it would unquestionably authorize a change of the 135,000 shares from non-assessable to assessable. Hence, the decisive question presented on this appeal is: Are respondent's shares subject to assessment?

In an early case, *Wall v. Basin Min. Co., Ltd.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013, this court said:

"The sole question presented on this appeal is: Was the appellant's stock subject to assessment and sale?"

"This inquiry may be subdivided into two parts: First. Under the constitution and laws of this state, can fully paid-up stock in a corporation be assessed? Second: Does the fact that certificates of stock bear upon their face the words 'full paid up and non-assessable,' render shares—represented by such certificates, which have been fully paid up—non-assessable?"

After an exhaustive discussion of the question as to whether fully paid up stock of a corporation could be assessed, this court said:

"If a corporation necessarily incurs an indebtedness in maintaining itself or preserving its property, it becomes legally bound to pay and discharge such indebtedness; and the only question of concern is: By what means shall such indebtedness be discharged? Shall the entire property be sold, or has the corporation power to levy an assessment upon its stock and thereby discharge such indebtedness? Certainly a stockholder would lose no more by having his stock subjected to sale for nonpayment of assessments, than he would lose if the entire property owned by the corporation were sold for the payment of the same indebtedness, and we do not believe that it was the intention of the constitution to prohibit a corporation from levying assessments

against full paid stock, and upon failure to pay the same, subjecting the stock to sale for the purpose of raising money to meet the obligations of such corporation; for if this cannot be done, a corporation often would be unable to prevent its entire capital from being sacrificed by sale, in order to discharge a small indebtedness, which might be discharged by an inconsequential assessment.''

And then the court held:

''So we conclude that Sec. 17, Art. 11 of the constitution relates to and limits the personal liability of a stockholder, but that it in no way limits the power of the corporation to make assessments upon stock fully paid up and subjecting such stock to sale for the purpose of discharging the obligations of such corporation. This conclusion, we think, is supported by the history of the legislation of this state in relation to a stockholder's liability in a corporation.''

Having so held on the point involved in the first inquiry, the court proceeded to discuss the second inquiry, to wit: Was the capital stock of the Basin Mining Company subject to assessment and sale:

''This brings us to the consideration of the second inquiry; that it: Does the fact that certificates of stock bear upon their fact the words 'full paid up and nonassessable' render shares represented by such certificates which have been fully paid up nonassessable?''

''The position of counsel for respondent upon this phase of the case is tersely stated in their brief as follows:

'' 'We maintain, therefore, that where the governing statute imposes upon fully paid stock liability for subsequent assessments, the stockholders cannot vary their liability by abrogating those provisions of the statute, and we do not believe that any sound authority can be cited to the court supporting the contrary doctrine.' ''

Continuing, the court said:

''In this connection we call attention to the fact that the controversy in this case arises between the corporation and a stockholder, that the rights of a creditor to enforce his claim against a stockholder or the liability of a stockholder to a creditor for corporate debts is not involved (and that is likewise true in the case at bar). This distinction should be kept

in mind in order to apply and distinguish the cases dealing with this subject and cited by counsel, for in the case under consideration the question to be determined is: Can a corporation agree with its stockholders that the stock issued by such corporation shall not be subject to assessment? That is, Can such an arrangement or agreement be made which is binding as between the corporation and the stockholder? Rev. Codes, sec. 2750, provides:

" 'The directors of any corporation formed or existing under the laws of this state, after one-fourth of its capital stock has been subscribed, may, for the purpose of paying expenses, conducting business or paying debts, levy and collect assessments upon the subscribed capital stock thereof, in the manner and form, and to the extent, herein provided.' " (An examination of this case (*Wall v. Basin Mining Co., Ltd.*) will disclose that all of the stock of the company had been subscribed, issued and transferred in full payment of the mining property conveyed to the corporation, pp. 317, 318.).

. . . .

"The inquiry then arises: Does the fact that a certificate of stock, issued by a corporation, bears upon its face the words 'fully paid up and nonassessable' amount to a contract between the corporation and the stockholder; and has the corporation power to make the same?"

. . . .

"When the corporation issued its stock and incorporated in the certificates the statement 'non-assessable,' it certainly did so for some purpose, and that purpose, it would seem clearly appears from the certificate; that is, that the corporation represented and certified to prospective purchasers that the stock was in fact not subject to assessment. By such certificate the corporation so represented to the appellant and the appellant no doubt accepted such stock in payment of his services with the understanding and agreement that the value of his services amounted to the full par value of such stock; and that the company waived the right to levy any assessment against the same. If the words 'non-assessable,' when contained in a stock certificate, are not matters of substance and agreement and within the power of the corpora-

tion to make, then they are meaningless, and can only be used by the corporation to allure the unsuspecting investor into parting with his money, receiving in return a certificate which falsely represents the nature and character of the stock purchased."

In other words, what the court actually held in that case was: A corporation may contract, either by a provision in its articles of incorporation or a provision in its by-laws, that its capital stock is non-assessable; and it further and also held that "when the corporation certifies (as in the case at bar) the shares represented by a certificate are 'non-assessable,' such provision becomes a part of the contract between the corporation and the stockholder, and, as between the corporation and stockholder, such agreement may be relied upon and enforced."

In the case of *Whicher v. Delaware Mines Corp.*, 52 Ida. 304, 15 Pac. (2d) 610, it appears that corporation attempted, by re-organization, to convert non-assessable shares of its capital stock into assessable shares, instead of employing the plan attempted in the case at bar. While the shares of the capital stock of the Delaware Mines Corporation (organized under the laws of the state of Idaho) were expressly made non-assessable by its articles of incorporation, this court again held that when a corporation organized under the laws of this state, issues stock certificates as "non-assessable," such clause becomes a matter of agreement and a part of the contract, and the corporation itself has no power to levy an assessment on such shares in violation of the contract. We quote:

"Appellants urge the further contention that the proposed reorganization simply amounted to an effort to change their nonassessable shares in the Delaware company to assessable shares in the new corporation, and that such a program if carried out would violate their contract rights and deprive them of property in violation of constitutional limitations. This position is also well founded in law.

"It is the settled law of this state that when a corporation organized in the state issues stock certificates as non-assessable, this clause becomes a matter of agreement and a part of the contract and the corporation itself has no power to levy an

assessment thereon in violation of the contract. The rule was originally announced by this court in *Wall v. Basin Co., Ltd.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013, in the following language: 'Our attention has not been directed to any statutory provision, and we know of none, which prohibits the articles of incorporation from containing a provision to the effect that the stock issued by the corporation is non-assessable.' Neither is there any provision of the statute which would prohibit a corporation from so providing in its by-laws. The effect of such provision would be in the nature of an agreement between the stockholders of the corporation and between the stockholders and the corporation, to the effect that the corporate stock of such corporation would not be 'assessed,' thereby agreeing that, if obligations of the corporation were to be discharged and the corporation did not have the money with which to pay the same, then the corporate property should be subjected to and applied in discharge of such indebtedness, instead of raising the same by assessment against the stock. So, when the corporation certifies that the shares represented by a certificate are 'non-assessable,' such provision becomes a part of the contract between the corporation and the stockholder, and, as between the corporation and stockholder, such agreement may be relied upon and enforced.

"The rule is approved and followed in *Jonas v. Frost,* 32 Ida. 214, 179 Pac. 949, where the court took a further step in announcing that the contract might be changed by *agreement* between the stockholder and the corporation. In *Reinertsen v. Idaho Power & Concentrating Co., Ltd.,* 32 Ida. 353, 182 Pac. 851, not only was the proposition again affirmed, but it was held that the contract need not be written into the certificate and could be proven by any competent evidence. These cases have been cited and approved in *Porter v. Northern Fire & Marine Ins. Co.,* 36 N. D. 199, 161 N. W. 1012, and *Lum v. American Wheel & Vehicle Co.,* 165 Cal. 657, Ann. Cas. 1915A, 816, 133 Pac. 303.

"Thus it will be observed that the question is no longer open in Idaho."

Appellants contend the legislature, under article 11, section 2, of the Constitution[1], has reserved power to, and by statute passed in 1929 (Sess. Laws 1929, p. 545) did, authorize corporations to change non-assessable to assessable stock, citing *Somerville v. St. Louis Mining & Milling Co.*, 46 Mont. 268, 127 Pac. 464, 465, 466, L. R. A. 1915B, 811, which apparently supports the contention. Other cases are also cited: *Mid Northern Oil Corp. v. Walker*, 65 Mont. 414, 211 Pac. 353, 357; *Rainey v. Michel*, 6 Cal. (2d) 259, 57 Pac. (2d) 932, 105 A. L. R. 148; *Security State Bank v. Sharpe*, 170 Minn. 454, 212 N. W. 801–803; *Wasson v. Planter's Bank & Trust Co.*, 188 Ark. 343, 65 S. W. (2d) 528–531, 90 A. L. R. 141.

While the Montana supreme court so held, the supreme court of the state of Utah, in *Garey v. St. Joe Min. Co.*, 32 Utah, 497, 91 Pac. 369, 374, 12 L. R. A., N. S., 554, held:

"Bearing in mind that the corporate charter is a dual contract—one between the state and the corporation and its stockholders, the other between the corporation and its stockholders—and that under the reserved power the state may alter or amend the former, but not the latter, the question is: Under which do the legislative enactment of 1903 and the action taken by the majority of the stockholders fall? We are of the opinion that they do not pertain to any right, privilege, or immunity which the state had granted to the corporation or to its stockholders, and that the action by such stockholders in no wise affected or was related to the contract existing between the state and the corporation. It merely pertains to and affects the contract existing among the stockholders themselves. Neither the enactment nor the stockholders' amendment of the articles purport to be for the

[1] Idaho Constitution, article 11, section 2, provides:

"No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal, or reformatory corporations as are or may be, under the control of the state; but the legislature shall provide by general law for the organization of corporations hereafter to be created: provided, that any such general law shall be subject to future repeal or alteration by the legislature."

benefit of the creditors or for the benefit of the public. Thereunder no right or privilege in favor of creditors or the public is created, and thereunder no creditor could assert any right or claim that could not have been asserted by him prior to the enactment. In the original articles of incorporation each stockholder agreed, one with the other, that his full-paid capital stock should be nonassessable. . . . To permit the Legislature to confer authority upon any number of stockholders less than the whole to bind a dissenting minority to another and a different agreement in such respect is to force them into a contract which they never made and which they are not willing to make. To do so is to confer the power of the majority to determine the amount of contributions that each stockholder is required to make. . . . The exercise of such a power is something which affects the very core of the contractual relations of the stockholders among themselves; and a legislative enactment which confers such a power is, in our judgment, an impairment of the obligation of a contract which is protected by the federal Constitution.''

Assuming but not conceding the legislature, under article 11, section 2, of the Constitution, has reserved power to, and that it did and could, authorize corporations to change non-assessable to assessable stock, without impairing the obligation of a contract that the stock should be non-assessable (as contended by appellants), that could not possibly vest a corporation with authority to commit fraud by inducing investors to purchase its stock upon the false representation that its shares were not assessable. If so, it puts the Constitution to a new and strange use.

We turn now to the contention of appellant that respondent ''A. C. Frost & Co. having been legally dissolved in the state of its incorporation (it was stricken from the records of the office of the Secretary of State of the State of Washington for failure to pay its annual license fee, under the laws of that state), and no legal existence at the time of the execution of the contract or contracts entered into by it and under which it claims its stock in the defendant corporation is non-assessable, could not legally enter into any contract, and the purported contracts were void from the beginning.''

The trial court found, upon ample evidence:

"The defendant Coeur d'Alene Mines Corporation accepted the plaintiff A. C. Frost & Co., a corporation, as the assignee of that certain contract in writing bearing date of September 10, A. D. 1934, between the defendant Coeur d'Alene Mines Corporation and one W. J. Boland, hereinafter referred to, and accepted performance of said contract by the plaintiff A. C. Frost & Co. as a corporation; entered into an agreement in writing with the plaintiff A. C. Frost & Co. as a corporation to modify said contract with respect to the dates and amounts of the monthly payments to be made thereunder, on or about April 26, 1935; agreed in writing with the plaintiff A. C. Frost & Co. as a corporation to modify said contract on or about May 15, 1935, by accepting an offer submitted to the defendant corporation in writing by the plaintiff corporation in its corporate name and signed by its president, under date of May 11, 1935; accepted performance of said contract by the plaintiff A. C. Frost & Co., as a corporation, and as the assignee of the said W. J. Boland, by accepting payments from the plaintiff corporation for all shares of stock issued under said contract, and by issuing the certificates of stock therefor to A. C. Frost & Co., a corporation and its nominees, and as directed by it, and generally dealt with the plaintiff A. C. Frost & Co., as a corporation, with respect to the performance of said contract and the purchase of the shares of stock hereinafter set forth during all the time that said shares of stock were being purchased and said certificates issued therefor."

Having accepted respondent as the assignee of the Boland contract and the performance of such contract by respondent, and having entered into a written contract with respondent to modify the dates and amounts of the monthly payments to be made thereunder, and having accepted payments from respondent for all shares of stock issued under the Boland contract, and having generally dealt with respondent as a corporation, appellant corporation is estopped to deny the corporate existence of respondent. (*Toledo Computing Scale Co. v. Young,* 16 Ida. 187, 101 Pac. 257; *Ferguson Fruit & Land Co. v. Goodding,* 44 Ida. 76, 85, 258 Pac. 557; *Shaw Supply Co., Inc., v. Morgan,* 48 Ida. 412, 282 Pac. 492.)

From what has been said it follows the judgment appealed from must be affirmed and it is so ordered. Costs awarded to respondent.

Ailshie, C. J., and Budge, J., concur.

GIVENS, J., Dissenting.—*Wall v. Basin Min. Co., Ltd.*, 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013, considered only the status of stock with the words upon its face, "fully paid and non-assessable," as the statute stood then and prior to 1929, and neither that decision or those following it on that point cited by respondent (*Reinersten v. Idaho Power etc. Co., Ltd.*, 32 Ida. 353, 182 Pac. 851, *Whicher v. Delaware Mines Corp.*, 52 Ida. 304, 15 Pac. (2d) 610, *Porter v. Northern Fire & Marine Ins. Co.*, 36 N. D. 199, 161 N. W. 1012, and *Lum v. American Wheel & Vehicle Co.*, 165 Cal. 657, 133 Pac. 303, Ann. Cas. 1915A, 816) considered whether such stock could be made assessable by subsequent legislation under the reserved power of the legislature to amend statutes governing corporations bottomed on article 11, section 2, of the Constitution.[1]

The earliest case we have found under a Constitution identical with ours, and on the precise point herein, is *Garey v. St. Joe Min. Co.*, 32 Utah, 497, 91 Pac. 369, 374, 12 L. R. A., N. S., 554, which held as follows:

"Bearing in mind that the corporate charter is a dual contract—one between the state and the corporation and its stockholders, the other between the corporation and its stockholders—and that under the reserved power the state may alter or amend the former, but not the latter, the question is: Under which do the legislative enactment of 1903 and the action taken by the majority of the stockholders fall? We

1 Idaho Constitution, article 11, section 2, provides:

"No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal, or reformatory corporations as are or may be, under the control of the state; but the legislature shall provide by general law for the organization of corporations hereafter to be created: provided, that any such general law shall be subject to future repeal or alteration by the legislature."

are of the opinion that they do not pertain to any right, privilege, or immunity which the state had granted to the corporation or to its stockholders, and that the action by such stockholders in no wise affected or was related to the contract existing between the state and the corporation. It merely pertains to and affects the contract existing among the stockholders themselves. Neither the enactment nor the stockholders' amendment of the articles purport to be for the benefit of the public. Thereunder no right or privilege in favor of creditors or the public is created, and thereunder no creditor could assert any right or claim that could not have been asserted by him prior to the enactment. In the original articles of incorporation each stockholder agreed, one with the other, that his full-paid capital stock should be nonassessable. . . . . To permit the Legislature to confer authority upon any number of stockholders less than the whole to bind a dissenting minority to another and a different agreement in such respect is to force them into a contract which they never made and which they are not willing to make. To do so is to confer the power on the majority to determine the amount of contributions that each stockholder is required to make. . . . . The exercise of such power is something which affects the very core of the contractual relations of the stockholders among themselves; and a legislative enactment which confers such a power is, in our judgment, an impairment of the obligation of a contract which is protected by the federal Constitution.''

*Somerville v. St. Louis Min. & Mill. Co.*, 46 Mont. 268, 127 Pac. 464, 465, 466, L. R. A. 1915B, 811, reached the opposite conclusion without specifically mentioning *Garey v. St. Joe Min. Co., supra,* but nevertheless evidently cognizant of it:

''Certain principles of law relating to corporations are so well settled that, as to them, there is not any difference of opinion. (1) The charter granted by a statement to a corporation, when accepted, becomes a 'contract' within the meaning of the contract clause of the federal Constitution. *Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. Ed. 629, (2) Such contract operates in a threefold relationship, *viz.:*

(a) Between the state and the corporation; (b) between the corporation and its stockholders *inter sese*. (3) A state may reserve the right to alter or amend the charter of a corporation, or to alter, amend, or repeal the laws under which the corporation was organized. And (4) the provisions of our state Constitution and the statutes referred to above constitute such a reservation of power and authority.

. . . . . . . . . . . . .

". . . . The legislation in force at the time of the organization of a corporation enters into and becomes a part of the contract, to the same extent as if set forth at length in the contract; and, upon the theory which we have adopted, there was read into the charter of the Ajax Mining Company this statement, in effect: This corporation shall not without the unanimous consent of its stockholders dispose of all the corporate property, until such time as the Legislature may authorize it to do so. And upon the same theory, the recital in the charter of the St. Louis Mining & Milling Company that its stock should be non-assessable is to be read, in the light of the reserved power, to mean: This stock shall be non-assessable until such time as the Legislature shall provide that it shall be assessable, or until such time as it is rendered assessable pursuant to legislation authorizing such change. If our theory of the reserved power is correct, and these stipulations are to be read into the charters of these companies, it follows, as of course, that section 511, Civil Code, above, does not impair the obligation of the contract entered into when the St. Louis Mining & Milling Company accepted its charter."

*Garey v. St. Joe Min. Co., supra,* has generally not been followed. (*Davis v. Louisville Gas & Elec. Co.,* 16 Del. Ch. 157, 142 Atl. 654; *Barth v. Pock,* 51 Mont. 418, 155 Pac. 282, 285; *Schroeter v. Bartlett Syndicate Bldg. Corp.,* 8 Cal. (2d) 12, 63 Pac. (2d) 824; annotation, 72 A. L. R. 1259, note III.) The Montana case has been more generally considered to be the correct rule under a Constitution like ours. (*Mid-Northern Oil Corp. v. Walker,* 65 Mont. 414, 211 Pac. 353; *Rainey v. Michel,* 6 Cal. (2d) 259, 57 Pac. (2d) 932, 105 A. L. R. 148; *Security State Bank v. Sharpe,* 170 Minn. 454, 212 N. W.

801, 803; *Wasson v. Planters' Bank & Trust Co.,* 188 Ark. 343, 65 S. W. (2d) 528, 531, 90 A. L. R. 141.

The Utah case considered there would be an impairment of the obligation of contract because, by the change the individual could be deprived of his stock; on the other hand *Wall v. Basin Min. Co., Ltd., supra,* and *Somerville v. St. Louis Min & Mill. Co., supra,* as well as a later Utah case (*Weede v. Emma Copper Co.,* 58 Utah, 524, 200 Pac. 517), point out the same result ultimately follows if the stock may not be changed into assessable stock. That is, if no assessment may be levied the corporation might be unable to continue and all stock be lost.

If the constitutional provision of article 11, section 2, means anything at all it must mean that the legislature has the power and authority to change the statutes regulating preexisting corporations or previously issued stock, for the legislature without constitutional authority—since there is no restriction thereon—has the undoubted right to legislate with respect to subsequent corporate actions or subsequently issued stock.

It is asserted that this construction of the statute results in unfairness to the stockholders. Let us examine the other side of the picture a moment and see what results from the majority construction of the statute.

Respondent owns such a large block of stock that his refusal to pay assessments thereon might force the corporation to lose all its property, whereupon the property of the corporation might be repurchased by respondent at a low figure and the other stockholders frozen out. Under such construction the corporation and minority stockholders lose everything. If an enforceable assessment is made any stockholder failing to pay would alone lose his stock but the corporation would be able to retain its property.

It is of course to be kept in mind that we are dealing with assessment of stock after it has been fully paid for and not the question of so-called single or double liability as considered in *Fralick v. Guyer,* 36 Ida. 648, 213 Pac. 337.

The point is made that section 2, article 11, reserves power to legislate only as to the relationship between the corporation

and the state, and not between the corporation and stockholders and among others, *Haberlach v. Tillamook County Bank,* 134 Or. 279, 293 Pac. 927, 72 A. L. R. 1245, and *Schramm v. Done,* 135 Or. 16, 293 Pac. 931, are cited as supporting such thought and the holding in *Garey v. St. Joe Min. Co.,* 32 Utah, 497, 91 Pac. 369, 12 L. R. A., N. S., 554.

The Oregon cases are distinguishable from the case herein for three reasons: First, they do not rely upon the distinction as to the relationship between the corporation and the state and its stockholders, since they cite with approval the Dartmouth College case, 4 Wheat. 518, 4 L. ed. 629, which did not involve the relationship between the corporation and stockholders; second, the Oregon Constitution has no such provision as section 2, article 11, and of course the applicability of such constitutional provision was not considered, but evidently the effect of such provision was in mind because of this language in *Schramm v. Done, supra*:

"Although there is some conflict in the decisions, the prevailing rules are as follows: Where the state has not reserved the power to alter, amend, or repeal the charter of a corporation, the provision of the Constitution of the United States (article 1, § 10) against laws impairing the obligation of contracts protects the contract between the corporators or members, and between them and the corporation, as well as the contract between the state and the corporators or corporation (*Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. Ed. 629), and therefore any material or fundamental amendment of the charter by or under legislative authority, or by a constitutional amendment, in order that it may be binding, must have the unanimous assent of all the stockholders or members, and the Legislature cannot authorize acceptance of or assent to such an amendment by a majority of the stockholders or members so as to bind the minority. 14 C. J., p. 187, § 193."

In the third place the imposition upon the stockholders there considered was not an assessment as herein, but involved single or double liability, which was not that considered herein, as expressly stated herein, referring to *Fralick v. Guyer,* 36 Ida. 648, *supra.*

The judgment should therefore be reversed and remanded with instructions to enter judgment in favor of appellants.

Morgan, J., concurs in this dissent.

Petition for rehearing denied.